J. T. WILLIAMS ET AL. v. FARMERS NATIONAL BANK.

Decided February 24, 1900.

**1. Chattel Mortgage—Bill of Sale Held Such.**

A bill of sale of cattle given as collateral security to a note, the possession of the cattle remaining with the maker, and the instrument reciting that if the maker fails to pay the note at maturity the bill of sale shall become absolute and the title to the cattle shall pass without any legal process, is a chattel mortgage, and title does not pass thereby.

**2. Same—Registry Necessary as Against Creditor.**

An unregistered chattel mortgage, the property remaining in the possession of the mortgagor, is void as against a creditor of the mortgagor levying an execution on the property. Rev. Stats., art 3328.

**3. Same—Injunction Not Mortgagee's Remedy.**

A mortgagee of cattle is not entitled to an injunction to restrain their sale under an execution levied by a creditor of the mortgagor, as the statutory proceeding of trial of the right of property affords an adequate remedy at law. Sumner v. Crawford, 91 Texas, 129, distinguished.

APPEAL from the County Court of Clay. Tried below before Hon. H. A. ALLEN.

*J. C. Chestnut,* for appellants.

*R. E. Taylor,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought by the appellee bank to enjoin the sale of certain cattle levied on by the sheriff by virtue of an execution issued from the Justice Court of Dallas County in favor of Parlin & Orendorff Co. against G. C. Wright. The bank claimed to be the owner of the cattle at the date of the levy—February 28, 1899.

Appellants' counsel raises several interesting questions in his very able brief, but we find it necessary to discuss only two which are conclusive of the rights of the parties as shown by the record.

The bank's claim of title was based upon the following instrument, which bore no file marks or other evidence that the same was ever registered or recorded:

*"The State of Texas, County of Clay.*—Know all men by these: That I, G. C. Wright, of the county of Clay and State of Texas, for and in consideration of the sum of $350, to me paid by the Farmer's Natl. Bank of Henrietta, Texas, have bargained, sold, and conveyed, and by these presents do bargain, sell, and convey, unto the said Farmers Natl. Bank the following personal property, to wit: Fifty head of stock cattle about two miles south of Henrietta and branded ⟨v⟩ on right side. This instrument intended as a bill of sale attached to my note as collateral security. Now if I pay said 350 at or before maturity, then this of sale is to become null and void, but if I fail to pay said note when due, then

this bill of sale is to become absolute and the title to said property to pass without any legal process.

"Witness my hand at Henrietta, Texas, this the 19th day of November, 1898. (Revenue stamp affixed 6/7/99.)

(Signed)    "G. C. WRIGHT."

The president of the bank, in its behalf, testified as follows: "I am the president of the Farmers National Bank. I wrote the bill of sale. G. C. Wright signed same on the day purported. We claimed the cattle under bill of sale. Never took possession until after levy of execution. I still hold Wright note bill of sale was given for. It is not paid." He further testified that Wright's note matured according to terms of bill of sale thirty days after date, and that he still held same in his possession. "We claimed cattle under bill of sale after maturity of note, and had no knowledge of the Tura Britain mortgage."

Wright was in possession of the cattle when the execution was levied, and had on January 16, 1899, mortgaged them to Tura Britain, and in almost every other way asserted dominion and control over them just as an owner would.

It is clear to us that the instrument above quoted, called a bill of sale, is only a chattel mortgage. It shows that it was given as a security for the payment of a note of even date, and the fact that it contained a clause that the title to the cattle should become absolute in the bank without any legal process, if the mortgagor should fail to pay the debt at maturity, does not change the legal nature of the instrument. "If the transfer is made for the purpose of securing the payment of an existing debt, it is a mortgage, it matters not what may be the form of the transaction." Tied. on Sales, sec. 204.

The evidence is undisputed that the note remained unpaid, and the cattle remained in Wright's possession and under his dominion as owner until some time after the execution was levied, he even mortgaging them to a third party after the maturity of the bank's note. The instrument, being a chattel mortgage, was void against creditors levying thereon, because it was not registered with the county clerk as required by statute. Rev. Stats., art. 3328.

It was error also to grant and perpetuate the injunction, because the bank had an adequate remedy at law, to wit, the statutory remedy of trial of the right of property. Rev. Stats., arts. 5286, et seq.; Geers v. Scott, 33 S. W. Rep., 587; Alexander v. Banner, 30 S. W. Rep., 563.

We distinguish clearly this case from the case of Sumner v. Crawford, 91 Texas, 129. The facts of that case show that the statutory remedy would not have been adequate, but in this case it was purely a question of title to the cattle or their market value if carried away, and the statutory remedy would have been complete and adequate.

The case was tried by the court without the intervention of a jury, and must be determined by the legal effect of the written instrument named and the right to the equitable remedy of injunction where the statute

has provided an adequate remedy, and we therefore find it our duty under the statute, for the reasons stated above, to reverse the judgment of the County Court and render the same in favor of appellants, dissolving the injunction and dismissing plaintiff's petition.

*Reversed and rendered.*